**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| VIET MINH TRAN,<br><br>Plaintiff,<br><br>v.<br><br>ALEJANDRO MAYORKAS<br>*Secretary, U.S. Department of Homeland Security*, *et al.*,<br><br>Defendants. | Civil Action No. 24-3171 (ABJ) |

**MEMORANDUM OPINION**

Plaintiff Viet Minh Tran brought this action against the United States Citizenship and Immigration Services ("USCIS"); Joseph B. Edlow, in his official capacity as Director of USCIS; Alissa Emmel, in her official capacity as Chief of the Immigrant Investor Program Office; and Markwayne Mullin, in his official capacity as Secretary of the Department of Homeland Security.[1] Compl. [Dkt. # 1] at 1. Plaintiff is a citizen of Vietnam who petitioned USCIS for an EB-5 visa, a visa issued to foreign investors who make qualifying investments in U.S. companies, and he challenges the agency's denial of his petition. Compl. ¶¶ 1–4. He brings three claims under the Administrative Procedure Act, 5 U.S.C. § 706, alleging that the agency's decision contained errors of law, was arbitrary and capricious, and constituted discriminatory treatment. Compl. ¶¶ 56–77.

Pending before the Court are the cross-motions for summary judgment filed by plaintiff and defendants. Pl.'s Mot. for Summ. J. & Statement of Points & Auth. [Dkt. # 21] ("Pl.'s Mot.");

1 Defendants Mullin and Edlow are substituted in automatically as defendants in this action pursuant to Federal Rule of Civil Procedure 25(d).

Defs.' Opp. to Pl.'s Mot. & Cross-Mot. for Summ. J. [Dkt. # 24] ("Defs.' Cross-Mot."). The motions have been fully briefed. Pl.'s Opp. to Defs.' Cross-Mot. & Reply to Def.'s Resp. [Dkt. # 27] ("Pl.'s Opp."); Defs.' Reply in Supp. of Cross-Mot. & Opp. to Pl.'s Mot. [Dkt. # 29] ("Defs.' Reply"); J.A. of Certified Admin. Record [Dkt. # 31]; Admin. Record [Dkt. ## 31-1, 31-2] ("A.R.").

For the reasons stated below, plaintiff's motion for summary judgment will be **DENIED**, and defendants' motion will be **GRANTED**.

## BACKGROUND

### I. Statutory and Regulatory Background

In 1990, Congress amended the Immigration and Nationality Act ("INA") to establish the EB-5 Immigrant Investor Program, which provides "employment creation" visas for individuals who make qualifying investments into "new commercial enterprise[s]" in the United States. Immigration Act of 1990, Pub. L. No. 101–649, § 121(a), 104 Stat. 4978, 4987–90 (1990). To qualify for an EB-5 visa, the INA requires the individual to have "invested" or be "in the process of investing" a specified amount of "capital" in a "new commercial enterprise" that would "benefit the United States economy by creating full-time employment" for at least ten U.S. workers. 8 U.S.C. § 1153(b)(5)(A). At the time plaintiff filed his EB-5 petition, the INA required a capital investment of $500,000 "in a targeted employment area." 8 U.S.C. § 1153(b)(5)(C)(ii) (2006).

The Immigration and Naturalization Service – the predecessor agency to USCIS – enacted regulations establishing the procedure for applying for an EB-5 visa. Employment-Based Immigrants, 56 Fed. Reg. 60897, 60910–13 (Nov. 29, 1991). Under the codified regulations, the individual seeking the visa must file an I-526 petition that includes "evidence that the [petitioner] has invested or is actively in the process of investing lawfully obtained capital" in a qualifying

"commercial enterprise." 8 C.F.R. §§ 204.6(a), (j). The regulation defines "[c]apital" as "cash, equipment, inventory, other tangible property, cash equivalents, and indebtedness secured by assets owned by the alien investor," and it states that "[a]ssets acquired, directly or indirectly, by unlawful means (such as criminal activities) shall not be considered capital[.]" *Id.* § 204.6(e). "To show that the petitioner has invested . . . capital obtained through lawful means," section 204.6(j)(3) provides that "the petition must be accompanied" by:

> (i) Foreign business registration records;
>
> (ii) Corporate, partnership (or any other entity in any form which has filed in any country . . . ), and personal tax returns including income, franchise, property (whether real, personal, or intangible), or any other tax returns of any kind filed within five years, with any taxing jurisdiction in or outside the United States by or on behalf of the petitioner;
>
> (iii) Evidence identifying any other source(s) of capital; or
>
> (iv) Certified copies of any judgments or evidence of all pending governmental civil or criminal actions, governmental administrative proceedings, and any private civil actions (pending or otherwise) involving monetary judgments against the petitioner from any court in or outside the United States within the past fifteen years.

*Id.* §§ 204.6(j)(3)(i)–(iii).

In an adjudication of an EB-5 visa application, the burden of proof rests with the petitioning investor, 8 U.S.C. § 1361; 8 C.F.R. § 103.2(b)(1), who must establish that he is fully qualified for the visa by a preponderance of the evidence. *Matter of Chawathe*, 25 I. & N. Dec. 369, 375 (2010).[2]

---

2 Some decisions of the Department of Homeland Security Administrative Appeals Office are precedential and binding on agency officers and on immigration judges in future proceedings. *See* 8 C.F.R § 1003.1(g), (i). The Administrative Appeals Office's decision in *Matter of Chawathe* was designated as precedent on October 20, 2010. *See* 25 I. & N. Dec. at 369 n.1.

## II. Factual Background

Plaintiff submitted his petition for an EB-5 visa on September 12, 2018. A.R. 18, 24. The petition stated that he made a "qualifying investment" of $500,000 into Steelpointe EB-5, LLC ("Steelpointe"), which was a "New Commercial Enterprise formed to provide funding for the construction and development of the . . . Steelpointe Harbor Planned Development District in Bridgeport, Connecticut." A.R. 18. It further represented that an "Initial Economic Impact Study" of the project found that it would "result in the creation of 1,723 new, full-time, permanent jobs for U.S. workers." A.R. 22.

Plaintiff submitted a "Source of Funds" statement with his petition, which detailed his background and "the source of the capital used to fund [his] investment" in Steelpointe. A.R. 2882. Plaintiff obtained a bachelor's degree in architecture and then worked as a design engineer. A.R. 2882. In 2007, using a monetary gift of 2,000,000,000 Vietnamese Dong ("VND") from his parents, plaintiff formed the Dai Dong Construction – Design – Consulting Co., Ltd. ("Dai Dong CDC") with two minority business partners. A.R. 2882, 2886. In 2014, when his partners "decided not to be further involved with the day-to-day operations," plaintiff formed an affiliate company, Dai Dong Project Development Co. Ltd. ("Dai Dong PD"). A.R. 2882, 2886. From 2015 to 2017, Dai Dong PD earned after-tax profits of 22,543,699,727 VND, and in June 2018, it "declared to distribute 60% of its profits from 2016–2017." A.R. 2886–87. Plaintiff received a payout of 13,616,278,000 VND, equivalent to $592,000, which he used to invest in Steelpointe. A.R. 2887.

The Source of Funds statement also explained how plaintiff's parents accumulated the money they gifted him to start Dai Dong CDC. A.R. 2883–85. From 1975 to 1995, the parents were members of a "government mechanical cooperative," and they purchased pieces of construction equipment to complete projects assigned by the cooperative. A.R. 2883. Through

those projects, they accumulated savings of 875,000,000 VND, which they kept in the form of gold. A.R. 2883.

In 1995, "Vietnam entered into a new economic reform," and the government granted plaintiff's father the right to develop 73.5 hectares of "raw land." A.R. 2883.[3] Over the years following, plaintiff's family reclaimed 120 hectares of land that they used mostly for "cattle ranching and assorted tree farming." A.R. 2884. Plaintiff's parents earned a total profit of 12,000,000,000 VND from the farming and ranching, and in 2007, they sold the entire farm and ranch for 4,400,000,000 VND. A.R. 2884–85. In the same year, they gifted plaintiff 2,000,000,000 VND. A.R. 2884–85.

The Source of Funds statement also included a section titled "Path of Funds" that traced how plaintiff's investment made its way to Steelpointe:

> [D]ue to the current currency exchange restrictions in Vietnam, in order to remit my investment capital to the bank escrow account of [Steelpointe], I have enlisted the assistance of my business intermediary that agreed to serve as an accommodation remitter, receiving [Vietnamese Dong] currency from me as I withdrew funds from my [Indovina Bank] Account No. 3339 and arranging for the remittance of an equivalent amount of U.S. currency from DBS Bank, Hong Kong to Saul Ewing Arnstein & Leher LLP's escrow account at City National Bank of Florida in the United States . . . [.] Saul Ewing Arnstein & Lehr LLP is acting as the escrow agent for the Steelpointe EB-5 LLC project. Subsequently, Saul Ewing Arnstein & Lehr LLP issued the escrow confirmation receipt of the funds transferred on my behalf totaling USD 550,061.01 . . . .

A.R. 2887. The section also listed the supporting documents transmitted to the agency with the petition:

3 73.5 hectares converts to approximately 181 acres of land.

- An "IVB Withdrawal Slip of Tran Minh Nhat, Account No. 3339, cash withdrawal of VND 13,600,000,000 for my EB-5 investment" from July 26, 2018;
- An "IVB Account Statement of Tran Minh Nhat Account No. 3339 showing Debit of VND 13,600,000,000 for EB-5 investment" from July 26, 2018;
- A "DBS Hong Kong Bank Transfer Request of USD 550,100.000 for Viet Minh Tran" on July 26, 2018;
- A "City National Bank of Florida Bank Receipt of USD 550,061.01" from July 27, 2018; and
- A "Saul Eving Arnstein & Lehr LLP's Escrow Confirmation Letter of USD 550,061.01 for Viet Minh Tran" from July 27, 2018.

A.R. 2888.

The Administrative Record includes three of these documents: (1) a document titled "Telegraphic Transfer" that details the transfer of "USD550,100.00" from "HONGKONG ZHENHAO ELECTRONICS CO." to "STEELEPOINTE SAUL EWING ARNSTEIN" on July 26, 2018; (2) a "Bank Receipt" from the "City National Bank Wire Transfer Department" reflecting a transfer of $550,061.01 from "DBS Bank (Hong Kong) Limited" by order of "HONGKONG ZHENHAO ELECTRONICS CO" to "STEELEPOINT SAUL EWING ARNSTEIN AND LEHR LLP" on July 27, 2018; and (3) a letter from Saul Ewing Arnstein & Leher LLP dated July 27, 2018 "confirm[ing] that Arnstein & Lehr LLP as Escrow Agent for Steelpointe EB-5, LLC is holding the amount of Five Hundred Fifty Thousand Sixty-One and 01/1000 Dollars ($550,061.01) in cleared funds" on behalf of Viet Minh Tran. A.R. 3359–60, 3365.

**A. The Request for Evidence and Plaintiff's Response**

On February 26, 2021, the USCIS issued a "Request for Evidence" notifying plaintiff that his evidence did "not establish that the capital" he invested was "obtained through lawful means."

Request for Evidence, Ex. A to Jt. Notice of Docketing [Dkt. # 34-1] at A. R. 3369. As to the source of plaintiff's funds, it asked him to submit several items, including: evidence of his parents' personal tax payments and other evidence to corroborate their business earnings; a purchase agreement or other evidence to demonstrate the parent's sale of the 120 hectares of land; business licenses for Dai Dong Construction and Dai Dong PD; tax returns for Dai Dong PD; and evidence to demonstrate that the profit distribution from Dai Dong PD was allowable per company rules. A.R. 3370–72.

As to the path of plaintiff's funds, the Request for Evidence asked for: "a diagram and a detailed chart explaining complete path of . . . funds from Vietnam to the NCE to include . . . all transactions with bank account numbers, names of individual/corporate bank account holders, and dates"; the name of the business intermediary he used to exchange his Vietnamese currency, and its business license, registration, website, and physical work address; the business license, registration documents, physical work address, and any website for HongKong Zhenhao; and more information regarding the transactions he noted in his petition. A.R. 3375–76.

Plaintiff responded to the request on July 30, 2021. A.R. 3390. He asserted that he "used his best efforts" to obtain additional documentation related to the investment, but that "limited documentation [was] available due to the passage of time," and "[m]ost individuals and businesses do not keep records, or are not required to keep records for that long, and to expect documentation such as bank statements and tax documents from that long ago is unreasonable." A.R. 3391.

Concerning the source of his parent's monetary gift, plaintiff produced "a few pictures" of his family's land reclamation and an old business card, but "[d]ue to the passage of time," he was not able to obtain any documentation corroborating his parent's business. A.R. 3391. "[A]t the time, all the farming activity logs and business records were manually recorded as computerized

bookkeeping did not exist." A.R. 3391. And since the farm was sold in 2007, "all such documents were transferred to the new owner." A.R. 3391. Also, because plaintiff's parents "operated their . . . business as an individual household business, . . . no business registration was required." A.R. 3391. And because the Vietnamese government encouraged people to engage in land reclamation "by offering tax exemptions on all income earned from these activities," plaintiff's parents "do not have any income tax documentation to provide." A.R. 3391–92. Plaintiff was able to find the "closing document" reflecting the sale of the farm to Khanh Tan Joint Stock Company, but he was unable to find the original agreement. A.R. 3393.

With respect to his own companies, plaintiff told the agency that he could not produce the business licenses of Dai Dong CDC or Dai Dong PD because there is no separate licensing requirement for those types of companies under Vietnamese law. A.R. 3393. He also could not produce any audited financial statements because, "[p]er Vietnam's Law on Enterprises, private limited companies are not required to provide audited financial statements to the government, and therefore such documents were not prepared for the company." A.R. 3393–94. As to the tax documentation, plaintiff responded that both companies were only required to pay taxes in the years in which they recognized income from ongoing projects, and he produced the documents for the relevant years for both companies. A.R. 3393–94.

Regarding the agency's request for additional evidence corroborating plaintiff's receipt of profits distributed by Dai Dong PD and whether he paid taxes on them, plaintiff responded:

> Profit distributions are allowed per Vietnam's Law on Enterprises, therefore, as a registered limited company, Dai Dong Project is alleged to distribute profits. . . . In accordance with tax regulations in Vietnam for limited liability companies, the company's income tax includes taxes paid on behalf of the company's members who received profit distributions. Therefore, the company's members are not required to pay any additional taxes on their profit distributions.

A.R. 3395. He added that he could not produce his own tax records because, "[a]s CEO of Dai Dong Project, [he] did not receive any salary, and therefore was not required to file separate individual tax returns." A.R. 3395.

Plaintiff's response to the Request for Evidence then addressed the "path" the investment funds traveled to get to Steelpointe. A.R. 3395. He said he "enlisted the assistance of [an] investment advisor, Dean Company," to deal with the currency exchange, and Dean Company "introduced him" to the Military Commercial Bank Joint Stock Bank ("Military Bank") to further arrange "for the exchange and transfer of USD 550,100 to [Steelpointe's] escrow account." A.R. 3395. According to plaintiff, Military Bank was "a listed commercial bank in Vietnam that regularly assists with international funds transfers for their valued customers as a good will service," but "[s]ince this was a one-time service," there was no documented agreement between plaintiff and Military Bank. A.R. 3395.

The response included the facts that on July 26, 2018, plaintiff withdrew 13,600,000,000,000 VND in cash from his Indovina Bank account ending in 9001 and "immediately deposited the cash with [Military Bank]." A.R. 3397. The same day, 12,245,226,000 VND of the funds in the Military Bank account "were exchanged" into $550,100, and then deposited into an internal Military Bank account. A.R. 3397. Military Bank then transferred the $550,100 to a DBS Bank Hong Kong account "held by HongKong Zhenhao Electronics Co., Limited . . . , an overseas business intermediary of [Military Bank]." A.R. 3397. HongKong Zhenhao then transferred the $550,100 to Saul Ewing Arnstein & Lehr's escrow account at City National Bank of Florida. A.R. 3397.

According to plaintiff, although he requested documentation of the transaction from Military Bank with respect to HongKong Zhenhao's involvement, "he was informed that . . . , once

the transaction is completed successfully, [Military Bank] no longer requires the overseas business intermediary to retain any documents related to the transaction or provide additional documents." A.R. 3397. And "since HongKong Zhenhao is a business intermediary of [Military Bank]," plaintiff had "no access to the company to request additional documentation." A.R. 3397.

The response also listed several documents that plaintiff provided to the agency, nine of which are included in the administrative record:

> (1) An Indovina Bank statement showing a cash deposit of 13,616,278,000 VND into plaintiff's account ending in 9001 on July 23, 2018 with the description "Dai Dong Project Management Company Limited Pays Dividends 2016-2017," and a cash withdrawal of 13,600,000,000 VND from the same account on July 26, 2018;
>
> (2) An Indovina Bank "withdrawal slip" showing a cash withdrawal of 13,600,000,000 VND from plaintiff's account ending in 9001 to "pay into account 0921" on July 26, 2018;
>
> (3) a Military Bank "cash deposit slip" showing that plaintiff deposited 13,600,000,000 VND into his account ending in 5913 on July 26, 2018;
>
> (4) a Military Bank "account statement" showing that a 13,600,000,000 VND "cash deposit from Indovina Bank ***9001" was credited into plaintiff's Military Bank account ending in 5913 on July 26, 2018, and that 12,245,226,000 VND was debited from the same Military Bank account for "F/X USD 550100TG . . ." on the same date;
>
> (5) a Military Bank "account statement" from July 26, 2018 showing a credit of $550,100 into an account ending in 5077, and a debit of the same amount "FOR VMTRAN . . .";
>
> (6) a Military Bank "payment order cum foreign exchange application" from July 26, 2018 showing the remittance of $550,100.00 from plaintiff to the account of "HongKong Zhenhao Electronics Co., Limited" at "DBS Bank HongKong Limited";
>
> (7) a letter from Military Bank dated May 18, 2021 stating: "We, the Military Commercial Joint Stock Bank ("MB"), hereby confirm that we had assisted you in receiving the total amount of VND 13,600,000,000 from you on 7/26/2018; and then further remitted the equivalent amount of USD 550,100 on your behalf to an overseas trading company that was introduced to us through our international banking network. Specifically, the transactions include: 07/26/218 MB received in cash

of VND 13,600,000,000 from Tran Minh Viet[;] 07/26/218 MB wire transferred USD 550,100 to HongKong Zhenhao Electronics Co., Limited."

(8) a website page titled "ICRIS Cyber Search Centre" showing business information for HongKong Zhenhao Electronics Co., Limited including the registered office address, the name of the director, and the company type as "Private company limited by shares"; and

(9) a flowchart depicting the path of plaintiff's funds from his bank account to Steelpointe:




A.R. 3488; 3490; 3494; 3498; 3504; 3506–07.

**B. The Agency's Decision on the Petition**

USCIS issued its decision denying plaintiff's petition on July 27, 2022. A.R. 3921. It concluded that "[t]he evidence in the record fail[ed] to establish that the capital, which has been invested by [plaintiff] . . . , is capital that has been obtained through lawful means." A.R. 3924. The agency's decision addressed both the "Source of [Plaintiff's] Investment Funds" the "Informal Value Transfer." A.R. 3927.

With respect to the Source of Funds, the decision highlighted several gaps in plaintiff's submission. While plaintiff submitted a "Payment Order" dated September 5, 2007 showing a payment of 1,800,000,000 VND from the Khanh Tan Joint Stock Company to plaintiff's mother

for 120 hectares of land "per an agreement on July 7, 2007," the record did not contain the actual agreement or other evidence sufficient to demonstrate its claimed sale for 3,600,000,000 VND. A.R. 3928. USCIS also noted that the photographs and business card provided as evidence of his parent's farm failed "to demonstrate by a preponderance of the evidence that the funds used by [plaintiff's] parents to gift to [him] derived from lawful means." A.R. 3929.

USCIS also raised an issue with respect to many of the legal assertions in plaintiff's response to the Request for Evidence: the record did not contain any of the Vietnamese regulations or laws that would support them. *See, e.g.*, A.R. 3928. So while plaintiff asserted that he could not produce a business registration for his parent's farm because "enterprise regulations in Vietnam" did not require it to have a business registration, "the record [did] not contain the enterprise regulations in Vietnam or other sufficient evidence to support" that claim. A.R. 3928. The same was true for plaintiff's claims that: (1) he could not produce his parent's income tax documents because all income earned from land reclamation and farming activities were exempted from taxation; (2) he could not produce Dai Dong Construction's income tax returns because it was not required to file income tax returns with the government; (3) Dai Dong Project was allowed to distribute profits as a "registered limited company"; and (4) he could not produce his own tax records because he did not receive a salary as CEO for Dai Dong Project, and therefore, he was not required to file a separate personal tax return. A.R. 3929–32.

The Informal Value Transfer section of the decision spotted an inconsistency in the financial documents plaintiff provided: the documentation from July 26, 2018 indicated that plaintiff withdrew 13,600,000,000 VND from his Indovina Bank account ending in 9001 and deposited that money into the MB account ending in 5913, but on the same day, he withdrew

13,600,000,000 VND from the Indovina Bank account ending in 9001 and deposited that money into his other Indovina Bank account ending in 0921. A.R. 3935.

It noted another inconsistency: "based on the account statement of [plaintiff] for his [Military Bank] account ending in 5913 and remittance details from MB, . . . it appears that [he] is now claiming that he exchanged VND 12,245,226,000 to USD by himself and directly transferred USD 550,100 to Zhenhao Electronics's DBS Bank account ending in 2996." A.R. 3936.

Finally, it noted that "[t]he record does not contain sufficient evidence to demonstrate that Zhenhao Electronics is a licensed or registered money service business in Hong Kong or in any other countries." A.R. 3935.

**C. Plaintiff's Appeal**

On October 24, 2022, plaintiff appealed the decision to USCIS's Administrative Appeals Office, arguing that he had met his burden of showing that the source of his investment funds and the path those funds traveled involved capital obtained by lawful means. A.R. 3973, 3977–81.

As to the source of the funds, plaintiff directed the agency's attention to the "Contract Closing" document he submitted as proof that his parents sold the family land for the amount claimed in his petition. A.R. 3977. Concerning the unsupported legal assertions, he explained that he had retained "TPL Law Firm" to write a legal opinion in support of all of his previous statements regarding Vietnamese law. A.R. 3977; *see e.g.*, A.R. 3979–80. He also provided notices from the Tax Department of Ho Chi Minh City confirming tax payments made by Dai Dong Construction and Dai Dong PD. A.R. 3979.

Regarding the path of the investment funds, plaintiff observed on appeal that "there appears to be a lot of confusion with respect to the interpretation by USCIS of certain submitted

evidence related to the path of [plaintiff's] funds." A.R. 3980. He reiterated his previous explanation of the currency exchange in the brief, adding:

> [I]n response to the Denial, [Military Bank] has again confirmed that [plaintiff] did not directly exchange VND funds to USD funds and did not directly transfer the USD funds to HongKong Zhenhao, that once the transaction was completed MB no longer required the intermediary to retain any related documents or provide any additional documents and therefore additional documentation from the intermediary is unavailable from MB, and since HongKong Zhenhao is an intermediary of MB [plaintiff] has no means to contact the intermediary directly for additional documentation.

A.R. 3980–81.

**D. The Agency's Decision on Appeal**

The Administrative Appeals Office denied the appeal on July 9, 2024, and the decision only addressed the issues surrounding the path of plaintiff's funds from his bank account to Steelpointe. A.R. 4261. It acknowledged that the record included evidence "verifying" some of the currency exchange transactions:

> Bank records confirm the [plaintiff]'s 13,600,000,000 VND withdrawal and his cash deposit of the same amount with [Military Bank]. The bank records also indicate that [Military Bank] debited 12,245,226,000 VND from [plaintiff's] 13,600,000,000 VND deposit, noting in the "Details" that the debit was for "F/X USD 550100 TG 22260." According to a document entitled "Payment Order Cum Foreign Exchange Application," [plaintiff] requested [Military Bank] to send $550,100 to Hongkong Zhenhao Electronics Co. Limited – a business that [Military Bank] refers to as its "business intermediary" – and the [plaintiff] agreed to allow [MB] to debit 12,245,226,000 from his 13,600,000,000 VND deposit.

A.R. 4262.

But it affirmed the agency's decision that the documentation was "insufficient to confirm the lawful source of the $550,100 that Hongkong Zhenhao . . . remitted to the [Steelpointe]'s escrow agent" because:

> [t]he record . . . does not contain sufficient evidence, such as Hongkong Zhenhao Electronics Co. Limited's bank records, confirming that [Military

> Bank] had sent $550,100 to the Hongkong company, that the Hongkong company had received the U.S. dollars from [Military Bank], or that the [plaintiff]'s funds ever left Vietnam.
>
> ***
>
> Without sufficient evidence documenting the complete path of the funds from [plaintiff] to Hongkong Zhenhao Electronics Co. Limited, specifically, from Military Commercial Joint Stock Bank to the Hongkong company, [plaintiff] has not demonstrated the lawful source of the funds that Hongkong Zhenhao Electronics Co. Limited sent on his behalf to [Steelpointe]. *See Matter of Ho*, 22 I&N Dec. at 210-11; *Matter of Izummi*, 22 I&N Dec. at 195.

A.R. 4262–63.

The decision went on:

> [A]ssuming *arguendo* that [Military Bank] indeed had remitted $550,100 to [Zhenhao Electronics,] the record is insufficient to confirm the lawful source of the U.S. dollars that the Hongkong company sent to [Steelpointe]. The "Payment Order Cum Foreign Exchange Application" indicates that the [plaintiff] requested [MB] to send $550,100 to the Hongkong company's account with account number ending in 2996. The "Bank Receipt" from [Steelpointe's] escrow agent appears to indicate that the Hongkong company remitted the U.S. dollars to the . . . escrow agent from the same account, an account with account number ending in 2996. However, the record lacks evidence, such as the Hongkong company's bank statements, confirming that the funds purportedly from [MB] did not commingle with other funds in the same account. As money is fungible, [plaintiff] must document the lawful source of all the funds in Hongkong Zhenhao Electronics Co. Limited's account before it remitted the U.S. dollars to [Steelpointe].

A.R. 4263. The appellate decision again complained that plaintiff "offered limited information" about HongKong Zhenzao, and that the record was insufficient to determine "how it generates revenue or if it operates a lawful business." A.R. 4264.

The Administrative Appeals Office "conclude[d]" that plaintiff had not established his eligibility for an EB-5 visa by a preponderance of the evidence, "[s]pecifically" because he did not "demonstrate[] the lawful source of his purported EB-5 investment." A.R. 4264. For that reason, it affirmed the denial of the visa petition, and because that was "dispositive of the appeal," it

"decline[d] to reach and hereby reserve[d] remaining arguments concerning his eligibility." A.R. 4264. In a footnote, the decision also noted that the initial denial decision:

> discussed other grounds to deny [plaintiff's] petition. For example, [it] concluded that the [plaintiff] had failed to sufficiently document the lawfulness of the 13,600,000,000 VND that he withdrew then deposited with Military Commercial Joint Stock Bank on July 26, 2018. We reserve this and other issues not discussed in this decision for future consideration if the need arises.

A.R. 4264.

**STANDARD OF REVIEW**

Summary judgment is appropriate when the pleadings and evidence show that "there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). However, in cases involving review of agency action under the Administrative Procedure Act ("APA"), Rule 56 does not apply due to the limited role of a court in reviewing the administrative record. *Select Specialty Hosp.-Akron, LLC v. Sebelius*, 820 F. Supp. 2d 13, 21 (D.D.C. 2011). Under the APA, the agency's role is to resolve factual issues and arrive at a decision that is supported by the administrative record, and the court's role is to "determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769–70 (9th Cir. 1985), citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971); *see also Richards v. INS*, 554 F.2d 1173, 1177 & n.28 (D.C. Cir. 1977).

Under the APA, a court must "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), in excess of statutory authority, *id.* § 706(2)(C), or "without observance of procedure required by law," *id.* § 706(2)(D). However, the scope of

review is narrow. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The agency's decision is presumed to be valid, *see Citizens to Preserve Overton Park*, 401 U.S. at 415, and the court must not "substitute its judgment for that of the agency." *State Farm*, 463 U.S. at 43.

A court must be satisfied, though, that the agency has examined the relevant data and articulated a satisfactory explanation for its action, "including a rational connection between the facts found and the choice made." *Alpharma, Inc. v. Leavitt*, 460 F.3d 1, 6 (D.C. Cir. 2006) (citations and internal quotation marks omitted). Moreover, the "agency must cogently explain why it has exercised its discretion in a given manner . . . and that explanation must be 'sufficient to enable [a court] to conclude that the agency's action was the product of reasoned decisionmaking.'" *Id.*, quoting *State Farm*, 463 U.S. at 48, 52. As long as "the agency's path may reasonably be discerned," a reviewing court will "uphold a decision of less than ideal clarity." *Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1404 (D.C. Cir. 1995), quoting *Bowman Transp., Inc. v. Ark.-Best Motor Freight Sys.*, 419 U.S. 281, 286 (1974).

**ANALYSIS**

In this action, plaintiff challenges the decision of the Administrative Appeals Office ("Final Decision") on three grounds: Count One alleges that the agency's reasoning was legally erroneous because its regulations do not require plaintiff to make the showings that the agency found to be deficient, Compl. ¶¶ 56–60; Count Two alleges that the decision was arbitrary and capricious because it was contrary to the evidence, and the agency applied a burden of proof higher than the preponderance standard, Compl. ¶¶ 61–73; and Count Three alleges that the decision constituted "disparate treatment" because USCIS approved "at least [twenty-five] EB-5 investors from

Vietnam with the same or substantially similar documentation," including plaintiff's brother. Compl. ¶¶ 74–77.

## I. The Appeals Office did not err as a matter of law in denying plaintiff's appeal.

Section 706 of the Administrative Procedure Act provides that a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . not in accordance with law." 5 U.S.C. § 706(2)(A).

At the outset, the Court agrees with the defendants' concession that the Administrative Appeals Office "could have used clearer language in its decision." Defs.' Cross-Mot. at 12. The interchangeable, inconsistent, and repetitive use of the phrases "lawful source" and "path of funds" is confusing, and the boilerplate language at the end of the decision does not clarify the agency's reasoning. As a result, the parties are not aligned on the reasons why the Administrative Appeals Office denied plaintiff's appeal. According to plaintiff, the agency's only concern was the lawfulness of HongKong Zhenhao's capital:

> [t]he Final Decision [did] not raise any questions about either the source of Plaintiff's capital, or its path to [Steelpointe]. . . . There is no dispute about where the funds came from, how they were transferred to [Steelpointe], or that they belong to [p]laintiff. The Final Decision is focused on the lawful source of a third party's capital – the Hong Kong Intermediary.

Pl.'s Mot. at 19. Based on that assumption, plaintiff devotes considerable attention to the argument that defendants made an error of law by conflating "capital" with "currency." Pl.'s Mot. 15–18; Pl.'s Opp. 2–4. In essence, plaintiff contends that he obtained no "capital" when he exchanged 12,245,226,000 VND into $550,100, and, therefore, he does not need to prove the "lawful source of [HongKong Zhenhao's] capital." Pl.'s Mot. at 19.

But that is not an accurate summary of the Final Decision. As defendants explain, the Final Decision gave two grounds for denying the appeal: (1) there was insufficient evidence that

Military Bank "sent $550,100 to [HongKong Zhenhao], that [HongKong Zenhao] had received the U.S. dollars from [Military Bank], or that the [plaintiff's] funds ever left Vietnam"; and (2) even if Military Bank did send $550,100 to HongKong Zhenhao, there was insufficient evidence "that the $550,100 [HongKong Zhenhao] remitted" to Steelpointe "did not derive, directly or indirectly, from unlawful means," because there was no evidence as to whether the funds were commingled with other funds or that HongKong Zhenhao was "a licensed or registered money service business." Defs.' Cross-Mot. at 12–13, citing A.R. 4262–64.

### A. Requiring plaintiff to document the complete path of funds from Vietnam to the United States was not an error of law.

The first reason for the denial identified in the Final Decision – that there was insufficient evidence that Military Bank sent the funds to HongKong Zhenhao – has nothing to do with the currency exchange. Defendants acknowledge that Military Bank debited 12,245,226,000 VND and noted in the transaction "Details" that the debit was for "F/X USD 550100 [plaintiff's passport number]. The issue, according to the Final Decision, was that plaintiff's documents only reflected his "request[]" that Military Bank remit the $550,100 to HongKong Zhenhao, without sufficient proof that it actually exchanged the currency or sent the funds. A.R. 4263; Defs.' Cross-Mot. at 14–15. Thus, contrary to plaintiff's assertions, the Final Decision did not "question[] the lawful source of HongKong Zhenhao's capital"; it found too many gaps in the documents to establish the complete "path of funds," *i.e.*, that plaintiff's capital made it out of Vietnam and into the United States. A.R. 4263; Defs.' Cross-Mot. at 15.

To the extent that plaintiff argues that the agency's "path of funds" requirement is itself an error of law, he is mistaken. Pl.'s Mot. at 14. The plain language of the EB-5 regulation, 8 C.F.R.§ 204.6, requires that the visa petition "must be accompanied by evidence that the alien has

invested . . . lawfully obtained capital" into a qualifying commercial enterprise. 8 C.F.R. § 204.6(j). It also dictates:

> To show that the petitioner has invested . . . the required amount of capital, the petition must be accompanied by evidence that the petitioner has placed the required amount of capital at risk for the purpose of generating a return on the capital placed at risk. . . . The alien must show actual commitment of the required amount of capital. Such evidence may include, but need not be limited to . . . [b]ank statement(s) showing amount(s) deposited in United States business account(s) for the enterprise . . . .

*Id.* § 204.6(j)(2). And "[t]o show that the petitioner has invested . . . capital obtained through lawful means, the petition must be accompanied" by:

> (i) Foreign business registration records; (ii) Corporate, partnership . . . , and personal tax returns including income, franchise, property . . . or any other tax returns of any kind filed within five years . . . ; (iii) Evidence identifying any other source(s) of capital; or (iv) Certified copies of any judgments or evidence of all pending governmental civil or criminal actions, governmental administrative proceedings, and any private civil actions (pending or otherwise) involving monetary judgments against the petitioner from any court in or outside the United States within the past fifteen years.

*Id.* § 204.6(j)(3).

The administrative precedent that defendants cited in the Final Decision, *Matter of Izummi*, 22 I & N Dec. at 195, demonstrates how evidence showing the "path" of plaintiff's funds is relevant to the question of whether he invested capital. In that case, the visa petitioner submitted a letter from his bank "acknowledging the receipt of $120,000" and informing him that the bank had deposited the funds into a "custody account." *Id.* But the record did not "reveal from where these funds originated," and the agency concluded that it was "not known if the money came from the petitioner's overseas accounts, from his U.S. accounts, or from some other source." *Id.* Under those circumstances, the agency ruled that the petitioner had "failed to meet his burden of

establishing that the initial $120,000 were his own funds," noting that the petitioner "ha[d] not documented the path of the funds, such as by wire-transfer records." *Id.*

In sum, the regulation requires the individual seeking the EB-5 visa to provide evidence that he actually invested the required amount of lawfully obtained capital, that is, put the capital "at risk," into the commercial enterprise. The Court finds that the agency did not err in requiring plaintiff to provide evidence that his $550,100 capital investment actually made it through the currency exchange and money transfer to Steelpointe; that critical piece of information fits squarely within the requirements of the regulation. *See Sun v. USCIS*, CV No. 21-1612, 2025 WL 947463, at *6 (D.D.C. Mar. 28, 2025) ("As at least two courts in this District have now recognized, the relevant regulations authorize USCIS to require evidence showing the 'path of the funds' that an EB-5 petitioner invests in the United States to prove . . . that the invested capital in fact belonged to the petitioner[.]").

**B. Requiring plaintiff to provide evidence of the lawfulness of HongKong Zhenhao's business was not an error of law.**

The Final Decision includes a second basis for denying plaintiff's appeal, and plaintiff's attack on it on legal grounds is similarly misplaced. Plaintiff argues again that USCIS had no legal authority to inquire into the legitimacy of the currency exchange, but the Final Decision was not predicated upon or related to the currency exchange. The documents in the record show that Military Bank facilitated the currency exchange before it remitted the funds to HongKong

Zhenhao. A.R. 3981. But the discussion in the decision concerning HonKong Zhenhao involves gaps in the record *after* the currency exchange from VND to USD.[4]

Defendants raised two concerns: (1) plaintiff failed to document the lawful source of all the funds in the HongKong Zhenhao account to establish that his capital did not "commingle" with unlawful capital before HongKong Zhenhao remitted the $550,100 to the Steelpointe escrow agent, and (2) plaintiff failed to demonstrate that HongKong Zhenhao is a lawful business. Defs.' Cross-Mot. 17–18. In the memorandum in support of their motion for summary judgment, defendants argue that the second deficiency is sufficient to support the Decision, and they do not defend the first. Defs.' Cross-Mot. 18 n.9. Defendants maintain that plaintiff failed to show "what Zhenhao generally does as a business and what business activities Zhenhao is permitted to conduct

---

4 For reasons unclear to the Court, both parties characterize HongKong Zhenhao as a currency exchanger in their papers, and they trade arguments over whether plaintiff must demonstrate that the U.S. dollars acquired through the currency exchange were acquired through lawful means. *See* Pl.'s Mot. 17 ("[T]he Hong Kong Intermediary did not contribute its 'capital.' Rather, it accepted $500,100 [sic] of 'capital' and exchanged it into a different form of currency."); Defs.' Cross-Mot. at 18 ("USCIS can inquire into the legitimacy of a currency exchanger's general activities to determine whether the capital that an EB-5 visa petitioner acquired through a currency exchange was indeed acquired through lawful means.").

However, at numerous points in the administrative record and in both briefs, both parties acknowledge that Military Bank, not HongKong Zhenhao, facilitated the currency exchange. A.R. 3397, 3488, 3980, 4232, 4263. Indeed, as described in the June 10, 2022 letter from Military Bank to plaintiff, "[Military Bank] received the cash fund deposit from [plaintiff] on July 26, 2018. We then proceeded to foreign exchange from VND to USD and remitted USD to our business intermediary, HongKong Zhenhao Electronics Co. Limited, on [plaintiff's] behalf." A.R. 4232. In short, according to the record, Military Bank remitted $550,100 to a HongKong Zhenhao account ending in 2996, and HongKong Zhenhao remitted $550,100 from an account ending in 2996 to Steelpointe. A.R. 3397. Thus, the second ground for denying plaintiff's appeal had nothing to do with HongKong Zhenhao's role in exchanging currency. The cases plaintiff cites in its briefs are therefore inapposite, as they involve circumstances in which USCIS denied an EB-5 visa because the petitioner did not document the lawful source of funds from the third-party currency exchanger. *See Sun*, 2025 WL 947463, at *5; *Zhou v. Noem*, No. CV 19-2650, 2025 WL 416152, at *3 (D.D.C. Feb. 6, 2025); *Battineni v. Mayorkas*, 752 F. Supp. 3d 195, 214 (D.D.C. 2024).

in Hong Kong or elsewhere." Defs.' Cross-Mot. at 19. Plaintiff responds that he need not document the lawful source of the intermediary's funds. Pl.'s Opp. at 6. But the decision on appeal was not concerned with the lawfulness of the intermediary's *funds*; it raised questions about the lawfulness of the intermediary itself. The Final Decision observes that "[the evidence in the record does not explain] the nature of the Hongkong company's operation, including information on how it generates revenue or if it operates a lawful business." As plaintiff acknowledged in its appeal, HongKong Zhenhao "was merely a stop on the way – a link in the chain." A.R. 3981. The second ground for denying the appeal was the absence of evidence to verify that the entity that handled plaintiff's funds during that stop was lawful, and this is a legitimate concern given the "path of funds" requirement under 8 C.F.R. § 204.6.

Accordingly, it was not an error of law for defendants to require plaintiff to provide documentation establishing the lawfulness of HongKong Zhenhao's business.[5]

## II. The Final Decision's reasoning regarding plaintiff's failure to provide sufficient evidence of his path of funds was not arbitrary and capricious.

The APA provides that a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be" arbitrary and capricious. 5 U.S.C. § 706(2)(A).

As the Supreme Court explained:

> The scope of review under the "arbitrary and capricious" standard is narrow and a court is not to substitute its judgment for that of the agency. Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made.

---

5 Because defendants do not address the commingling argument, and because the Court finds that one of Final Opinion's arguments supporting the second reason for denial was not an error of law, it will not reach the question of whether it was an error of law to require proof that plaintiff's capital did not "commingle" with unlawful capital. *See Pierce v. SEC*, 786 F.3d 1027, 1034 (D.C. Cir. 2015) ("[A] reviewing court will uphold an agency action on several independent grounds if any of those grounds validly supports the result.").

*State Farm*, 463 U.S. at 43, citing *Burlington Truck Lines*, 371 U.S. at 168 (internal quotation marks omitted).

The D.C. Circuit has reiterated that agency action will be upheld if the agency "has considered the relevant factors and articulated a 'rational connection between the facts found and the choice made.'" *Nat'l Ass'n of Clean Air Agencies v. EPA*, 489 F.3d 1221, 1228 (D.C. Cir. 2007), quoting *Allied Loc. & Reg'l Mfrs. Caucus v. EPA*, 215 F.3d 61, 68 (D.C. Cir. 2000). In the ordinary APA context, this review is "[h]ighly deferential" and "presumes the validity of agency action." *Id.*, citing *AT&T Corp. v. FCC*, 349 F.3d 692, 698 (D.C. Cir. 2003) (alteration in original). But this is not to say that courts are expected to rubber-stamp agency decisions. *Nat. Res. Def. Council, Inc. v. Daley*, 209 F.3d 747, 755 (D.C. Cir. 2000). They need not defer to "conclusory or unsupported suppositions." *United Techs. Corp., Pratt & Whitney Div. v. U.S. Dep't of Def.*, 601 F.3d 557, 562 (D.C. Cir. 2010), quoting *McDonnell Douglas Corp. v. U.S. Dep't of the Air Force*, 375 F.3d 1182, 1187 (D.C. Cir. 2004). As the Court of Appeals put it when applying *State Farm*, "[t]he agency must cogently explain why it has exercised its discretion in a given manner, . . . and that explanation must be sufficient to enable us to conclude that the agency's action was the product of reasoned decisionmaking." *Alpharma*, 460 F.3d at 6 (internal citation and quotation marks omitted).

In short, the Court's job is "to evaluate the rationality of [the agency's] decision." *Mississippi v. EPA*, 744 F.3d 1334, 1348 (D.C. Cir. 2013). And when an agency "has failed to provide a reasoned explanation, or where the record belies the agency's conclusion, [the court] must undo its action." *Cnty. of Los Angeles v. Shalala*, 192 F.3d 1005, 1021 (D.C. Cir. 1999), quoting *BellSouth Corp. v. FCC*, 162 F.3d 1215, 1222 (D.C. Cir. 1999).

The denial of the appeal was not arbitrary or capricious. The Court acknowledges that plaintiff provided a substantial amount of documentation in an effort to establish, by a preponderance of the evidence, each step in the lawful path of his capital from Vietnam to the United States. However, the Court is not in a position to "substitute its judgment for the agency" and determine whether plaintiff satisfied the evidentiary requirement. *State Farm*, 463 U.S. at 43. Rather, the agency's decision must be upheld if there is a rational connection between the agency's findings and the Final Decision, and defendants' reasoning satisfied that "highly deferential" standard. First, the Final Decision explains that plaintiff only provided documents demonstrating a request to exchange his capital from VND to USD and remit the funds to HongKong Zhenhao, without any documents confirming that the request was fulfilled. A.R. 4263. Second, the Final Decision explains that plaintiff provided insufficient evidence to show that HongKong Zhenhao was a lawful business entity. *Id.* Both reasons highlight gaps in plaintiff's effort to trace the lawful path of his capital, as required by 8 C.F.R. § 204.6.

Even if the Court were to assess the sufficiency of the evidence differently, it cannot find the decision to be arbitrary and capricious and not fairly based on the record before it.

**III. Plaintiff's Equal Protection claim fails.**

Count Three alleges that plaintiff was subject to disparate treatment when his petition was denied, but USCIS approved his brother Nhat Minh Tran's petition and "other EB-5 investors from Vietnam [who used] money exchangers." Pl.'s Mot. at 24.

As an initial matter, "constitutional challenges to agency action are [] resolved within the APA's judicial-review framework." *Make the Road New York v. Mullin*, 179 F.4th 16, 29 (D.C. Cir. 2026), citing *Webster v. Doe*, 486 U.S. 592 (1988). Therefore, plaintiff's equal protection

challenge is properly reviewed under 5 U.S.C. § 706(2)(B) [6] and the associated requirements of the APA.

One such requirement is that the Court reviews "the whole record or those parts of it cited by a party." *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008), quoting 5 U.S.C. 706. Ordinarily, "review is to be based on the full administrative record that was before the Secretary at the time he made his decision." *Volpe*, 401 U.S. at 420 (1971). Parties are nevertheless permitted to supplement the record if one of three "unusual circumstances" applies: (1) the agency deliberately or negligently excluded documents that may have been adverse to its decision, (2) the district court needs to supplement the record with 'background information' in order to determine whether the agency considered all of the relevant factors, or (3) the agency failed to explain administrative action so as to frustrate judicial review. *Am. Wildlands*, 530 F.3d at 1002, citing *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1095 (D.C. Cir. 1996).

Here, plaintiff acknowledges that the administrative record does not contain any documents related to either Nhat Minh Tran's petition or a petition from any other Vietnamese investor. Pl.'s Opp. at 12–13. And, as defendants point out, those petitions could not have played a role in defendants' decisional process because plaintiff did not seek to introduce that evidence until after he filed in the instant suit. Defs.' Cross-Mot. at 26. Thus, the sole case plaintiff relies on, *Muwekma Ohlone Tribe v. Kempthorne*, 452 F. Supp. 2d 105 (D.D.C. 2006), is inapposite. In that case, which involved the Department of the Interior's inconsistent criteria for federal recognition of Native tribes, plaintiffs brought the inconsistencies to the attention of the agency, making that

---

6 "The reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . contrary to constitutional right, power privilege, or immunity." 5 U.S.C. 706(2)(B).

evidence part of the administrative record. *Id.* at 111, 115. It is not the Court's role to consider an issue *de novo* based on material that defendants did not have the opportunity to address in the decisional process.

Plaintiff argues that the Court should grant his request to supplement the record with his brother's petition because it qualifies as "background information" needed in order to determine whether the agency considered all of the relevant factors. *Am. Wildlands*, 530 F.3d at 1002; Pl.'s Opp. at 12–13. Plaintiff does not identify any "relevant factor" that the agency failed to consider in the Final Decision, though, since he never brought Nhat Minh Tran's petition to the agency or the Administrative Appeals Office's attention prior to filing the instant suit. Second, while it is true that courts have "recognized successful equal protection claims brought by a class of one," *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam), even if the Court permitted plaintiff to supplement the record now, his equal protection claim would fail on the merits.

The "two essential elements" of a class-of-one equal protection claim are "(1) disparate treatment of similarly situated parties (2) on no rational basis." *3883 Connecticut LLC v. District of Columbia*, 336 F.3d 1068, 1075 (D.C. Cir. 2003).

Plaintiff has provided the Court with Nhat's petition, and it appears that there are important factual differences between the two petitions. For instance, while it is true that both plaintiff and Nhat utilized Military Bank to facilitate the currency exchange and move the capital through an intermediary before it reached the United States, the intermediaries were different. In plaintiff's case, the funds passed through HongKong Zhenhao, while in Nhat's petition, the funds passed through "Global Impex Trading Co., Ltd." Nhat A.R. [Dkt. # 32-2] at 85. It was HongKong Zhenhao – and not the currency exchange – that was central to defendants' second reason for denying the appeal, and therefore, one cannot say that Nhat was similarly situated. Thus, plaintiff

has not supplied grounds to subject the Final Decision to scrutiny simply because his brother's petition was resolved differently.

**CONCLUSION**

As a matter of law, the administrative record supports defendants' Final Decision. Therefore, plaintiff's motion for summary judgment will be **DENIED,** defendants' motion for summary judgment will be **GRANTED**.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: September 30, 2026